IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRENDA EDWARDS                                                                                       PLAINTIFF

        V.                              Civil No. 2:22-cv-02002-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                  DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Brenda Edwards, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.      Procedural Background

Plaintiff protectively filed her application for DIB on January 6, 2020,[1] alleging disability since December 14, 2019, due to a limited education, back problems, hip problems, hand problems, and chronic bronchitis.  (ECF No. 10, pp. 52, 63, 148-154, 176, 216-217, 254-255).  The Commissioner denied Plaintiff's applications initially and on reconsideration, and an administrative hearing was held on March 16, 2021.  (*Id*. at 21, 29-49).  Plaintiff was present and represented by counsel.

---

[1] Plaintiff's prior applications were denied at the initial determination levels on January 1, 2009, and September 12, 2011.  (ECF No. 10, pp. 179-178).

On her alleged onset date, Plaintiff was 50 years old and possessed a ninth-grade education. (ECF No. 10, p. 21). Although she had past relevant work ("PRW") experience as a certified nurse aide ("CNA"), she performed no substantial gainful activity after her alleged onset date. (*Id*. at 21, 177, 209-215).

On April 14, 2021, the Administrative Law Judge ("ALJ"), Edward Starr, identified Plaintiff's degenerative disk disease ("DDD") and chronic bronchitis as severe impairments. (ECF No. 10, pp. 18). He concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and found her capable of performing light work with frequent climbing, balancing, crawling, kneeling, stooping, and crouching, and no concentrated exposure to pulmonary irritants such as dust, odors, and gas. (*Id*. at 18-19). With the assistance of a vocational expert ("VE"), ALJ Starr determined Plaintiff could still perform work as a collator operator, photocopying machine operator, and router. (*Id*. at 22).

On November 19, 2021, the Appeals Council denied Plaintiff's request for review. (ECF No. 10, pp. 5-9). She subsequently filed her Complaint to initiate this action on January 4, 2022. (ECF No. 3). Both parties have filed appeal briefs (ECF Nos. 13, 14), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.   Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support

it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only

considers Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

In a single issue on appeal, the Plaintiff insists that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ failed to consider her limited education, falling episodes, right thumb issues, DDD, and bronchitis.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing her RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that RFC is a medical question. *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, the ALJ's RFC determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

A review of the transcript in this case reveals that the ALJ's RFC assessment has substantial support. Records dating back to 2008 reveal that the Plaintiff began experiencing low back pain with numbness and tingling radiating down into her legs on August 10, 2008, after lifting and stacking totes at work. (ECF No. 10, pp. 279-280). Dr. Sean Neely prescribed Mobic and Ultram and restricted Plaintiff to lifting no more than five pounds with no bending or squatting. During follow-up visits, her pain persisted, rated as a 5 on a 10-point scale. (*Id*. at 281-282). The

medications prescribed were also causing extreme drowsiness. Palpation of the right sacroiliac joint elicited diffuse tenderness, most prevalent at the midline of the L4-5 vertebra, while forward flexion reproduced the numbness, tingling, radiating pain down her leg. X-rays of the lumbar spine showed mild scoliosis but no other significant findings. (*Id*. at 292-293). An MRI of her lumbar spine revealed a very small central focal disk protrusion and minimal retrolisthesis at the L5-S1 level; minimal dessication at the L1-2, L4-5, and L5-S1 levels; mild annular bulging at the L4-5 and L5-S1 levels; minimal degeneration to the facet joints at the L4-5 and L5-S1 levels; minimal to mild stenosis bilaterally at the L4-5 level; and mild bilateral L5-S1 foraminal stenosis. (*Id*. at 287-288). Dr. Neely diagnosed low back pain with neuritis and refilled her medications.

On August 11, 2011, Dr. Jim Burke conducted a consultative physical exam. (ECF No. 10, pp. 294-300). He documented a normal range of motion in the shoulders, elbows, wrists, hands, hips, knees, and ankles, despite complaints of pain in the right shoulder, right elbow, and right hip. Grip strength was 5/5 bilaterally with negative Phalen's and Tinel's signs. No crepitus or effusion were noted, and her lower extremity strength was 5/5 bilaterally. Plaintiff also exhibited normal hand skills and fine tactile manipulation of objects, adequate finger to thumb opposition, and negative straight leg raise ("SLR") tests bilaterally. However, her toe-heel walking was weak. She ambulated with a stable and safe gait at an appropriate speed, although she did have a limp on the right. Dr. Burke diagnosed DDD of the lumbar spine, chronic right hip pain, and chronic right shoulder and elbow pain.

As noted above, Plaintiff's prior applications for benefits were denied on January 1, 2009, and September 12, 2011. (ECF No. 10, pp. 179-178). Approximately seven years later, in September 2018, Plaintiff received emergent treatment for left foot pain, after stepping in a hole. (*Id*. at 353-356, 362-363). She had reportedly worked all week before presenting to the emergency room. On

exam, the doctor noted no musculoskeletal tenderness, edema, or deformities. An x-ray of her left foot revealed no fractures or evidence of dislocation. The doctor prescribed Diclofenac for a contusion to her foot.

On May 8, 2019, she was treated in the emergency room for right lower back pain radiating to her lateral hip. (ECF No. 10, pp. 350-353). Plaintiff explained that she had been lifting a patient from the floor when the patient fell on her, pushing her into the bed. Ibuprofen provided her with no relief. The physician noted tenderness, pain, and spasm in the lumbar spine with a normal range of motion and no bony tenderness. She prescribed a Medrol Dosepack, Flexeril, and Norco for a diagnosis of acute right-sided low back pain without sciatica.

On June 6, 2019, Plaintiff returned to the ER with a productive cough, congestion, and postnasal drip. (ECF No. 10, pp. 348-350, 359-362). An exam revealed a normal mental status exam with only cervical adenopathy. She exhibited normal breath sounds and effort with no evidence of respiratory distress. X-rays exposed underlying changes suspicious for a degree of emphysema and subtle changes related to bronchitis. The doctor diagnosed acute non-recurrent maxillary sinusitis and bronchitis and prescribed Zithromax and a Medrol Dosepack.

On June 26, 2019, Plaintiff was treated at the Booneville Mercy Clinic by advanced practical registered nurse ("APRN"), Glenda King, for bronchitis/COPD/emphysema. (ECF No. 10, pp. 302-304, 318-320, 345-348). She complained of a cough and wheezing, which was confirmed by exam. She exhibited a normal ROM in her neck and musculoskeletal system. APRN King prescribed Prednisone, an Albuterol inhaler, and Cefdinir.

Five months later, Plaintiff presented for emergent treatment due to a productive cough and diarrhea. (ECF No. 10, pp. 343-345). She also reported chest heaviness and pain in her back with coughing. Plaintiff had been taking BC powder. A chest x-ray showed questionable mild

hyperinflation. The doctor prescribed Doxycycline, Combivent Respimat, and Zofran for mucopurulent chronic bronchitis and acute diarrhea. It was noted that the Plaintiff was a smoker.

On December 5, 2019, Plaintiff returned to APRN King with complaints of lower back and hip pain, right worse than the left. (ECF No. 10, pp. 305-312, 321-330, 340-343, 357-362, 382-389, 420-425). She reported sharp pain from her back up to her neck with prolonged sitting, standing, and lying down. Plaintiff indicated her pain had been so severe that morning that she threw up. Muscle relaxers had not provided pain relief in the past. An exam revealed no acute distress but tenderness in the musculoskeletal system. X-rays of her hips and lumbar spine showed only mild degenerative changes with some possible mild disk space narrowing at the L2-3 level and mild spondylitic ridging. APRN King prescribed a trial of Celebrex and ordered physical therapy for diagnoses of chronic lumbar and bilateral hip pain.

One week later, she underwent a physical therapy evaluation with Derrick Tygart. (ECF No. 10, pp. 337-340, 378-381, 416-419). He noted increased bilateral lumbar pain with turning to each side, moderate tenderness over the bilateral lumbar paraspinals and gluteals, moderate irritation over the lumbar spinous process, positive SLR tests bilaterally, and painful bilateral lower trunk rotation. Mr. Tygart proceeded with modalities and instructed her regarding a home exercise program.

On April 1, 2020, Dr. Janet Cathey reviewed the record and concluded that Plaintiff could perform a full range of medium work. (ECF No. 10, pp. 56-57).

On June 23, 2020, Plaintiff sought treatment for lower back and bilateral hip pain after twice falling in the bathtub. (ECF No. 10, pp. 375-378, 409, 412-415). She also voiced an interest in weight loss medication. An exam documented some musculoskeletal tenderness and a wart on her left elbow. APRN King prescribed Mobic and Norco for lumbar pain.

Dr. Elizabeth Berry conducted an independent review of the record on August 6, 2020, and she affirmed Dr. Cathey's RFC determination. (ECF No. 10, pp. 68-69).

Two months later, APRN King treated Plaintiff for a swollen right thumb. (ECF No. 10, pp. 407-408, 410-411). She noted a knot on the inside of the thumb with pain between the knuckles. Plaintiff also reported continued chronic hip and back pain. APRN King diagnosed arthritis of the carpometacarpal joint of the right thumb.

On November 18, 2020, Plaintiff advised APRN King that her pain regimen was no longer effective. (ECF No. 10, pp. 403-406). Her right thumb was also jamming and locking at the knuckle. Despite documenting a normal exam, APRN King agreed to prescribe Norco and Celebrex for short-term pain relief. She also referred her to orthopedics for the evaluation of trigger finger.

In January 2021, Plaintiff was treated by APRN Julie Stover at Mercy Clinic Booneville for loss of smell and taste for two days. (ECF No. 10, pp. 397-402). Despite the absence of other symptoms, an exam revealed some wheezing, and a lab test was positive for COVID-19. Nurse Stover prescribed Dexamethasone and Azithromycin.

Initially, Plaintiff attacks the ALJ's treatment of her education. While we agree that a claimant's education level is a vocational factor that must be considered at step five of the sequential process, in the present case, the ALJ properly considered Plaintiff's education level. *See* 20 C.F.R. § 404.1560(c). She possessed a ninth-grade education with certification as a CNA. As determined by the ALJ, she had a limited education. *See* 20 C.F.R. § 404.1560(c). He then included her "limited education" in the hypothetical question posed to the vocational expert. (ECF No. 10, pp. 46-47). Therefore, no error occurred.

Plaintiff also contends that the ALJ failed to consider her falling episodes, but a review of the record reveals limited evidence of falling. Although she testified that she lost her job after falling on the job, she also indicated she lost her job due to a background check on other paperwork. (ECF No. 10, pp. 36-37, 176). Additionally, while she reported suffering at least four falls in the months leading up to the administrative hearing, she failed to report those falls to her physicians. (*Id*. at 38). The record documents only three falls. In May 2019, Plaintiff indicated that a patient had fallen on her and caused her to fall into a bed. And, in June 2020, she told her physician that she had twice fallen in the bathtub. Then, in January 2021, Plaintiff reported no falls in the last year. Moreover, repeated physical and neurological exams failed to reveal significant issues with gait, balance, strength, or sensation. Therefore, we find that the ALJ was not required to include additional limitations related to Plaintiff's infrequent falls.

Additionally, Plaintiff insists the ALJ did not properly consider her right thumb impairment. This alleged impairment, however, was not brought to her medical provider's attention until October and November 2020. At that time, APRN King noted a normal physical exam and diagnosed trigger finger and arthritis of the carpometacarpal joint of the right thumb. Although she referred the Plaintiff to orthopedics, there is no evidence she followed through with this recommendation. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (failure to follow prescribed medical treatment without good cause is a basis for denying benefits). APRN King also noted no restrictions and the Plaintiff sought out no further treatment. Noting that many unskilled light jobs do not require fine use of the fingers, Plaintiff's testimony that she could not

hold a pen and write without pain did not warrant additional limitations.[2]  (ECF No. 10, pp. 35).  *See* SSR 83-14, 1983 WL 31254 at *4.

Plaintiff also contends the ALJ failed to adequately account for her DDD when concluding she could perform light work with frequent posturals.  Her arguments, however, are based on her subjective complaints rather than the objective evidence of record disclosing only mild findings.  Lumbar x-rays showed mild degenerative changes with some possible mild disk space narrowing at the L2-3 level and mild spondylitic ridging.  An MRI also documented a very small central focal disk protrusion with minimal retrolisthesis at the L5-S1 level; minimal dessication at the L1-2, L4-5, and L5-S1 levels; mild annular bulging at the L4-5 and L5-S1 levels; minimal degeneration to the facet joints at the L4-5 and L5-S1 level; minimal to mild stenosis bilaterally at the L4-5 level; and mild bilateral L5-S1 foraminal stenosis.  *See Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (DDD with mild posterior bulging was not a disabling condition); *see also Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (focal disc herniation with moderate restriction of motion in back contradicted complaints of disabling pain).  Additionally, physical exams were all normal, noting nothing more than tenderness.  And the treatment regimen prescribed was conservative, consisting of only pain medication, muscle relaxers, and PT.  *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding conservative treatment is inconsistent with disability).  There is no indication that her condition warranted surgical intervention or even hospitalization, and her treatment providers imposed no physical restrictions.

Additionally, Plaintiff's suggestion that a limitation to occasional bending, crouching, crawling, or stooping would have limited her to sedentary work rather than light work is incorrect.

---

[2] Further, contrary to Plaintiff's argument, she did not testify that her thumb prevented her from using a computer.  Instead, she indicated that she could not use a computer because she did not know how to do so.  (ECF No. 10, p. 35).  Plaintiff also testified that she could send text messages via her cellular phone.

10

Light work generally requires only occasional bending and/or stooping. *See* SSR 83-14, 1983 WL 31254 at *4. And the positions identified by the vocational expert and accepted by the ALJ at step five require only occasional bending, crouch, crawling, and stooping. *See* DICTIONARY OF OCCUPATIONAL TITLES §§ 208.685-010, 207.685-014, 222.587-038.

As for her bronchitis, the ALJ correctly included environmental limitations in the RFC. There is no evidence to suggest that additional restrictions were necessary. Plaintiff was treated for bronchitis/COPD/emphysema flare-ups with prescriptions for antibiotics, steroids, and an inhaler. *See Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) (impairments that are amenable to treatment are not disabling). She was a smoker and regular exams revealed normal breath sounds. *See Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (because smoking causes COPD and emphysema, continuing to smoke equates to failing to follow treatment). Therefore, we find that the ALJ was not required to include any additional limitations in the RFC. *See Goodale v. Halter*, 257 F.3d 771, 773 (8th Cir. 2001) (respiratory impairments can be chronic but not serious or disabling).

Finally, the ALJ properly considered Plaintiff's activities of daily living and found them to be inconsistent with her alleged disability. Plaintiff reported that she cared for her dogs by feeding them and cleaning their pens; cared for her personal hygiene; prepared meals two to three times a day; cleaned but took all day to do so; went outside at least once daily; drove; went out alone; shopped in stores for one-and-a-half hours; handled her finances; swam in the summer; visited others via telephone and in her home; and looked after her elderly father. (ECF No. 10, pp. 43-44, 201-208). These activities are consistent with the ALJ's RFC finding for a range of light work. *See Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998) (doing crafts, raising flowers, driving,

cooking, cleaning, doing laundry, and shopping are activities consistent with the ability to perform light work).

## IV. Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed, and that the Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE